# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 19-cv-215-WJM

JENNIFER ELAINE HAWKES, an individual,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of the Social Security Administration,

    Defendant.

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

    This matter is before the Court on review of Defendant Commissioner of the Social Security Administration Andrew M. Saul's ("the Commissioner's") decision denying Plaintiff Jennifer Elaine Hawkes' ("Plaintiff's") application for disability insurance benefits and supplemental security income. Plaintiff filed an opening brief on May 3, 2019 (ECF No. 15), Defendant filed a response on May 28, 2019 (ECF No. 18), and Plaintiff filed a reply on June 9, 2019 (ECF No. 19). For the reasons set forth below, Defendant's decision to deny Plaintiff's application for social security benefits is vacated, and this case is remanded for further proceedings.

## I. BACKGROUND

    Plaintiff Jennifer Elaine Hawkes was born in November 1985 (ECF No. 11-3 at 4), and was 26 years old at the alleged disability-onset date of March 15, 2013 (ECF No. 11-13 at 1). Plaintiff completed high school and two college classes (ECF No. 11-2 at 36–37), and worked part-time for several years as a server (*id.* at 47). Plaintiff

initially filed for disability insurance benefits and supplemental security income on November 18, 2014, alleging the following disabling medical conditions: musculoskeletal disorder of neck; bipolar with psychotic features; anxiety; post-traumatic stress disorder ("PTSD"); attention-deficit hyperactivity disorder ("ADHD"); fibromyalgia; chronic pain syndrome; obsessive-compulsive disorder ("OCD"); insomnia; and hypersomnia. (ECF No. 11-3 at 4–5.) On April 28, 2015, the Commissioner made an initial determination that Plaintiff is not disabled. (*Id.* at 20.)

A hearing in front of an Administrative Law Judge ("ALJ") was held on November 10, 2015. (ECF No. 11-2 at 31.) On December 28, 2015, the ALJ found Plaintiff to be "not disabled" (*id.* at 12), and the Social Security Administration's Appeals Council denied review of that decision (*id.* at 2). That decision was appealed to this Court, which on November 3, 2017, vacated the decision of the Commissioner and remanded for further proceedings. (ECF No. 11-14 at 62.) Pursuant to the Court's order, the same ALJ conducted a second hearing on July 24, 2018.[1] (ECF No. 11-13 at 1.) The ALJ again determined that Plaintiff is not disabled (ECF No. 11-13), and Plaintiff again asks the Court to review the ALJ's decision.

The record reflects that Plaintiff has a long history of mental health impairments. When she was 12 years old, she began cutting herself. (ECF No. 11-9 at 90.) At 15, she was diagnosed with bipolar disorder. (*Id.* at 78.) After being raped at 17, she began suffering from post-traumatic stress disorder. (*Id.* at 78.) After the birth of her

---

[1] Before the Court's initial remand order, Plaintiff obtained additional medical evidence and refiled for disability benefits. The Commissioner again denied Plaintiff's application. The Appeals Council directed the ALJ to conduct a new hearing in light of the Court's remand order, and for her to consolidate the two matters in doing so.

two children, she began suffering from postpartum depression. (*Id.* at 78.) She continues to suffer from depression and paranoia, and additionally reports that she has intermittent auditory, visual, and command hallucinations. (ECF No. 11-13 at 53.) She has also been diagnosed with anxiety, obsessive-compulsive disorder, and attention-deficit hyperactivity disorder. (ECF No. 11-9 at 78.)

In addition, Plaintiff suffers from serious physical ailments. In 2011, she was diagnosed with fibromyalgia and chronic pain syndrome. (ECF No. 11-21 at 40.) She has also been diagnosed with degenerative disc disease of the cervical spine. (*Id.*)

## II. THE ALJ'S DECISION

The ALJ denied Plaintiff's claim for benefits in a decision dated September 26, 2018. (ECF No. 11-13.) In the sequential evaluation process required by law,[2] the ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018, and that she had not engaged in substantial gainful activity since March 15, 2013, the alleged onset date. (*Id.* at 13.)

At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia/chronic pain syndrome, bipolar disorder, anxiety disorder, ADHD, PTSD, and OCD. (*Id.* at 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of

---

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1998). The claimant has the burden of proof through steps one to four; the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 13.)

As to the residual-functional capacity ("RFC"), the ALJ found as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she requires work which is unskilled, with an SVP 1 or 2. This work should involve no more than routine tasks and simple decision-making without close proximity to coworkers or supervisors (meaning she cannot function as a member of a team).
>
> She is limited to minimal to no direct contact with the public. She can lift and/or carry ten pounds frequently and twenty pounds occasionally. She can stand or walk with normal breaks for a total of six hours in an eight-hour workday. She can sit with normal breaks for a total of six hours in an eight-hour workday. She can perform pushing and pulling motions with the upper extremities within the weight restrictions given. She can frequently climb ramps and stairs, but occasionally climb ladders, ropes or scaffolds. She [can] frequently crawl.

(*Id.* at 14–15.)

At step four, the ALJ determined that Plaintiff does not have any past relevant work. At step five, taking into account Plaintiff's age (26 at the alleged onset date), education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national and regional economies that Plaintiff can perform. (*Id.* at 26.) Based on the hearing testimony from a vocational expert, the ALJ determined that Plaintiff could perform such jobs as "assembler of small products" (Dictionary of Occupational Titles ["DOT"] # 706.684-022), "cleaner" (DOT # 323.687-014), and "routing clerk/mail sorter" (DOT # 222.687-022). (*Id.* at 27.) The ALJ accordingly found that Plaintiff "has not been under a disability, as defined in the Social Security Act," from the alleged onset date of March 15, 2013 through the date of the

4

ALJ's decision. (*Id.* at 27.)

### III. LEGAL STANDARD

The Court's review of a determination that a claimant is not disabled is limited to determining whether the record contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. However, the Court "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

### IV. ANALYSIS

Plaintiff seeks vacatur of the Commissioner's decision on three grounds: (1) the ALJ's determination that Plaintiff's statements regarding her symptoms were not consistent with the evidence was not based on substantial evidence; (2) the ALJ's reasons for giving little weight to the opinions of treating nurses Mark Jankelow and Sandra Yaney were not based on substantial evidence; and (3) the ALJ erred in failing

5

to address certain third-party statements. (ECF No. 15 at 1–2.) Because the Court finds that the Commissioner's decision should be vacated on the basis of the second ground, Plaintiff's remaining issues will not be addressed.

A.	**Relevant Treatment History**

Plaintiff received intermittent mental health treatment in her teenage years and early twenties. (ECF No. 11-13 at 17.) In early 2013, she began receiving regular mental health treatment at Aspen Pointe. (*Id.*) Aspen Pointe treated her with medication and therapy, and after six months, she experienced a reduction in symptoms and asked to be treated with medication only. (*Id.*) In January 2014, however, Plaintiff reported that she was depressed and got angry easily, was sleeping more, was paranoid, and experienced a visual hallucination. (*Id.*) Shortly thereafter, Plaintiff stopped treatment with Aspen Pointe, and began treatment with Psychiatric Mental-Health Nurse Practitioner Sandra F. Yaney, RxN, MN, MPH ("Yaney"). (*Id.*) Yaney reported as follows:

> [Plaintiff] presented to me in a manic and paranoid state, with high distractibility and pressured speech. She was sleeping about 5 hours per day, had obsessive thoughts, ritualistic behaviors, no appetite, and described her energy as "great." She denied depression but admitted to crying easily and being easily irritated. She reported racing thoughts and high levels of anxiety, particularly in social settings but also at home due to her obsessions and compulsions.
>
> Memory and comprehension were adversely affected. She had significant functional impairment in function related to anger, impulsive buying, and paranoia. She was concerned about her irritability and how it affected her parenting. She had also had one visual hallucination. When manic she buys collectibles online and does not sleep well. When she

is depressed she does not attend to hygiene for weeks.

(ECF No. 11-9 at 78.)

Yaney diagnosed Plaintiff with the following psychiatric disorders: "bipolar disorder, most recent episode mixed, with depressed mood, irritability, [and] poor impulse control; [PTSD], related to being gang-raped at age 17; [ADHD], inattentive type; [OCD], manifested by skin-picking and excessive shopping and collecting." (*Id.* at 79.) At the time of Yaney's report, she had seen Plaintiff fourteen times in thirteen months. Plaintiff reported to Yaney failed trials of the following medications: Remeron, Risperldone, Zoloft, Cymbalta, Geodon, Seroquel, Trazodone, Celexa, Effexor XR, Wellbutrin XL, Zyprexa, Lithobid, and Depakote.

Yaney prescribed Plaintiff the following psychotropic medications: Abilify, Topiramate, Gabapentin, Zolpidem, Vyvanse, Tramadol, Tizanidine, and Viibryd. (*Id.* at 79.) Yaney eventually determined that Plaintiff "has finally found a helpful and comprehensive med regimen, . . . [and] she could benefit from a thorough vocational rehab assessment. If she continues to remain stable, I believe that she could engage in a home-based business of some kind with minimal social interaction." (*Id.* at 79.) She further noted that "[i]t has taken us a full year of frequent visits to get her symptoms under control. I have seen her severely depressed, manic, in pain, and picking her skin to the point of excoriation." (*Id.* at 79.)

After Yaney retired, and Plaintiff began receiving regular psychiatric treatment from Psychiatric Mental-Health Nurse Practitioner Mark Jankelow, PMHNP ("Jankelow"). Jankelow saw Plaintiff six times from June 8, 2015 to September 30, 2015. (ECF No. 11-13 at 17.) He continued to treat Plaintiff every two to four weeks,

up to at least July 2018. (ECF No. 11-21 at 30, 47.) In October 2015, Jankelow filled out a mental RFC statement for Plaintiff. In it, he opined that Plaintiff would be off task at least 30% of the time during an eight-hour workday, would be absent at least four days a month, and would not be able to complete an eight-hour workday at least three days a month. (*Id*.) He stated that "[i]t would be extremely difficult for [Plaintiff] to function in a work environment due to her disabilities." (*Id.*) In a subsequent mental RFC statement dated February 22, 2017, and in a third dated July 11, 2018, Jankelow's findings were virtually identical. (*Id.* at 49, 30.)

**B.  The ALJ's Decision**

The ALJ determined that the opinions of Jankelow "are not persuasive." (ECF No. 11-13 at 22.) Her reasons were as follows:

> As noted previously, the mental status findings in this examination were relatively unremarkable. Nurse Jankelow's treatment records commonly revealed that the claimant was typically alert and oriented, able to communicate adequately, and able to relay her history, which suggests that despite her complaints, her concentration and memory are adequately intact. As noted previously [Plaintiff] admitted to being improved or okay [on] numerous occasions to Nurse Jankelow.
>
> Nurse Jankelow kept treating the claimant in an outpatient setting with routinely schedule[d] appointments. [Plaintiff] admitted to a number of activities over the years that tend to contradict the conclusion of this opinion, including that she started a support group, attended a conference, went on a road trip, and spen[t] a week staying with her best friend. As a whole, there is sufficient contrary evidence to lead one to conclude the claimant is less limited overall than found by Nurse Jankelow in his numerous opinions.

(*Id.*)

8

The ALJ also gave "little weight to the opinion of Sandra F. Yaney, N.P." (*Id.*) Her reasoning in this respect is very similar to the above, and is set forth below:

> This opinion is not persuasive. As noted previously, the mental status findings in this examination were relatively unremarkable. Evidence from other mental health providers indicates that [Plaintiff] is typically alert and oriented, able to communicate with her providers adequately, and able to relay her history, which suggests that despite her complaints, her concentration and memory are adequately intact. As noted previously [Plaintiff] admitted to being improved or okay [on] numerous occasions to Nurse Jankelow. Nurse Jankelow kept treating [Plaintiff] in an outpatient setting with routinely schedule[d] appointments.
>
> [Plaintiff] admitted to a number of activities over the years that tend to contradict the conclusion of this opinion, including that she started a support group, attended a conference, went on a road trip, and spen[t] a week staying with her best friend. As a whole, there is sufficient contrary evidence to lead one to conclude the claimant is less limited overall than found by Nurse Yaney.

(*Id.* at 22–23.)

"There are specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). "Failure to follow these rules constitutes reversible error." *Id*. With respect to claims filed before March 17, 2017, which Plaintiff's were, Social Security regulations differentiate between "acceptable medical sources" and "non-acceptable medical sources." 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927; SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006). Because Yaney and Jankelow are not acceptable medical sources, *see* SSR 06-03P, 2006 WL 2329939, at *1, their opinions are not entitled to "controlling weight," *id.* at *2. Nevertheless, the ALJ must consider and weigh the opinions of non-

acceptable medical sources using the same factors that apply to the weighing of opinions from acceptable medical sources. 20 C.F.R. § 404.1527(f)(1). In particular, depending on the source and context, the ALJ should consider the following:

> How long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other facts that tend to support or refute the opinion.

SSR 06-03P, 2006 WL 2329939, at *4–5.

In light of the above applicable law, the Court concludes that the ALJ committed reversible error, for the following reasons.

1. Sporadic Diversions

First, in relying on the fact that Plaintiff "started a support group, attended a conference, went on a road trip, and spen[t] a week staying with her best friend," the ALJ improperly imposed her lay judgment that these one-time activities meant that the significant limitations found by Yaney and Jankelow were not credible. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2004) (ALJ may not make speculative inferences from treatment reports). These one-off activities do not constitute substantial evidence that would allow the ALJ to reject the functional limitations identified by Yaney and Jankelow. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) ("sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity"). Moreover, the record reflects that these activities occurred at least a year before the ALJ issued the decision at issue here. (*See, e.g.*, ECF No.

10

11-23 at 41.)

2. <u>Consistency of the Evidence</u>

While the ALJ states that Yaney and Jankelow's opinions are inconsistent with the evidence as a whole (ECF No. 11-13 at 22–23), she fails to discuss the numerous aspects of the record with which they are consistent. Like Yaney and Jankelow, clinical neuropsychologist Dr. Lin Moeller, Ph.D., P.C., a treating medical source (whose opinion could potentially be entitled to controlling weight), states:

> Based both on clinical interview and personality testing, the patient shows very significant mental illness, including Bipolar Affective Disorder, Substance Abuse Disorder, [PTSD], and a Personality disorder. Additionally, the patient experiences chronic pain from fibromyalgia. Both her depression and chronic pain severely limit her ability to be gainfully employed and I doubt that she will ever return to even part-time employment.

(ECF No. 11-7 at 95.)

Additionally, treating medical source and clinical psychologist Judith Ray, Ph.D., diagnosed Plaintiff with "Bipolar I disorder with psychotic features; PTSD, chronic; [and] [g]eneralized anxiety disorder," and opined that "[i]t is almost impossible to visualize this person in a position where she could work outside of the home." (ECF No. 11-21 at 34.) The ALJ simply fails to discuss, in light of these corroborating and consistent opinions from acceptable treating medical sources, why the opinions of Yaney and Jankelow were accorded such limited weight.

3. "Mental Status Findings"

The ALJ's decision seems to rely heavily on her determination that "the mental status findings in [Yaney and Jankelow's] examination were relatively unremarkable."

11

(ECF No. 11-13 at 22.)  Preliminarily, the Court struggles to decipher this statement. There is nothing unremarkable about a diagnosis of, among other things, bipolar disorder and PTSD, along with a prescribed regimen of at least nine psychiatric medications.  (ECF No. 11-9 at 79.)  To the extent the ALJ is referring to her observation that "treatment records commonly revealed that [Plaintiff] was typically alert and oriented, able to communicate adequately, and able to relay her history, which suggests that despite her complaints, her concentration and memory are adequately intact," this analysis is improper for at least two reasons.

First, it is far from obvious what it is about being alert and oriented during a medical evaluation suggests that Plaintiff's illnesses are not as severe as Yaney, Jankelow, and several treating medical sources determined them to be.  Such an assertion on the part of the ALJ constitutes improper imposition of lay judgment.  *See McGoffin*, 288 F.3d at 1252.  Second, the Tenth Circuit has held that a consulting psychiatrist's observation of claimant's relative stability under non-stressful circumstances did not undercut the treating physicians' opinions about the plaintiff's inability to cope with the stress of handling people and demands in the work setting. *Washington*, 37 F.3d at 1440–41; *see also Jimenez v. Berryhill*, 300 F. Supp. 3d 1295, 1304 (D. Colo. 2018) (Kane, J.) ("[A] person's ability to interact appropriately at the occasional medical appointment does not indicate that he or she can maintain the level of appropriate socialization necessary for a full-time job.").

    4.    <u>Stability On Medication</u>

Relatedly, to the extent that the ALJ relied on Plaintiff's positive responses to medication, the Third Circuit has held it improper for an ALJ to reject a physician's

12

opinion based on a finding that the plaintiff was stable with medication. *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000). It noted that for a person who has mental impairments, "the work environment is completely different from home or a mental health clinic." *Id.* The court stated that the physician's "observations that Morales is 'stable and well controlled with medication' during treatment does not support the medical conclusion that Morales can return to work." *Id*.

As in the instant case, the physician in *Morales* opined that Morales was markedly limited in a number of relevant work-related activities," and that "[o]ther information in the treatment records supports this opinion." *Id*. The court concluded that the physician's opinion "shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting." *Id*.; *see also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("[T]he Commissioner erroneously relied too heavily on indications in the medical record that [the claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.").

**C.     Harmless Error**

The next question is whether the ALJ's errors require the Court to vacate and remand. A harmless error finding may save an ALJ's decision "where, based on material the ALJ did at least consider (just not properly)," the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729,

13

733–34 (10th Cir. 2005) (internal quotation marks omitted). The Court concludes that, on this record, a reasonable administrative factfinder could have found Plaintiff to be disabled, and as such, that the ALJ's errors are not harmless.

Yaney and Jankelow are, or were, Plaintiff's long-term providers of psychiatric care, and both opined that Plaintiff's mental disabilities precluded her from engaging in substantial gainful activity. (ECF Nos. 11-9, 11-12.) And as previously noted, treating medical source Dr. Moeller "doubt[s] that [Plaintiff] will ever return to even part-time employment[ ]" (ECF No. 11-7 at 95), and treating medical source Dr. Ray opined that "[i]t is almost impossible to visualize [Plaintiff] in a position where she could work outside of the home[ ]" (ECF No. 11-21 at 34). Additionally, Dr. Wiley J. Jinkins, MD, PC, a long-term pain-management provider and treating medical source, opined that Plaintiff could sit, stand, or walk no more than two hours per workday. (ECF No. 11-12 at 41.)

To be sure, the opinions of at least two treating medical sources, as well as the opinions of the medical sources who conducted Plaintiff's initial disability determinations, appear to support the ALJ's RFC determination. (ECF Nos. 11-3, 11-14, 11-10, 11-21). Nevertheless, given the medical evidence in support of Plaintiff's application, a reasonable administrative factfinder could have ruled in her favor, and thus the ALJ's errors discussed above were not harmless.

D.    **Plaintiff's Additional Arguments**

Because the Court vacates and remands for the reasons stated above, the Court will not address the other arguments raised by Plaintiff. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006). The Court expresses no opinion as to Plaintiff's other

14

arguments and neither party should take the Court's silence as tacit approval or disapproval of those arguments. The Court also does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## V. CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

1. The decision of the Commissioner to deny Plaintiff's applications for disability insurance benefits and supplemental security income is VACATED; and

2. This matter is REMANDED for further proceedings consistent with this Order.

Dated this 16th day of December, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge